UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in compliance with D.N.J. LBR 9004-2(c)**

**LOWENSTEIN SANDLER PC**
Kenneth A. Rosen, Esq. (KR 4963)
John K. Sherwood, Esq. (JS 2453)
Wojciech F. Jung, Esq. (WJ 2047)
Eric H. Horn, Esq. (EH 2020)
65 Livingston Avenue
Roseland, New Jersey 07068
Tel: (973) 597-2500
Fax: (973) 597-2400

*Proposed Counsel to the Debtors and
Debtors-in-Possession*



FILED
JAMES J. WALDRON, CLERK
JUN 0 5 2012
U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY _____ DEPUTY

In re

**155 Route 10 Associates, Inc.,** *et al.,*[1]

                              **Debtors.**

**Chapter 11**

**Case No. 12-24414 (NLW)**

**(Joint Administration Requested)**

## INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364 AND 507 (1) APPROVING POSTPETITION FINANCING, (2) AUTHORIZING USE OF CASH COLLATERAL, (3) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (4) GRANTING ADEQUATE PROTECTION, (5) MODIFYING AUTOMATIC STAY, AND (6) SCHEDULING A FINAL HEARING

The relief set forth on the following pages, numbered two (2) through and including fifty-

one (51), is hereby ORDERED.

June 5, 2012

Novaly L. Wifild
USBJ

---

[1]      The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: 155 Route 10 Associates, Inc. (7269), SDA, Inc. (7289) and Wayne Philadelphia Associates, Inc. (7249).

Page: 2
Debtors: In re 155 Route 10 Associates, Inc., *et al.*
Case No. 12-24414 (NLW)
Caption: Interim Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364 And 507 (1) Approving Postpetition
Financing, (2) Authorizing Use Of Cash Collateral, (3) Granting Liens And Providing Superpriority
Administrative Expense Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay, And (6)
Scheduling A Final Hearing

THIS MATTER having come before the Court upon the motion (the "**DIP Motion**") by

SDA, Inc. ("**SDA**" or the "**Borrower**") and its subsidiaries, each as a debtor and debtor in

possession (collectively the "**Debtors**") in the above-captioned Chapter 11 cases (collectively,

the "**Cases**"), pursuant to Sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)

and 507 of title 11 of the United States Code, (11 U.S.C. §§ 101 *et seq.*, as amended, the

"**Bankruptcy Code**"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure

(the "**Bankruptcy Rules**"), and D.N.J. LBR 4001-4, seeking entry of an interim order (this

"**Interim Order**") *inter alia*:

(i)     authorizing the Borrower to obtain, and 155 Route 10 Associates, Inc. and Wayne

Philadelphia Associates, Inc. (collectively, the "**Guarantors**") to guaranty, secured, superpriority

postpetition financing (the "**DIP Facility**"), consisting of a senior secured super-priority

revolving credit facility pursuant to the terms and conditions of that certain Debtor-in-Possession

Credit and Security Agreement (as amended, supplemented, restated, or otherwise modified from

time to time, the "**DIP Credit Agreement**") by and among the Borrower and the Guarantors

(together, the "**Debtor Parties**"), and Salus Capital Partners, LLC (the "**DIP Lender**"),

substantially in the form of Exhibit A attached to the DIP Motion; and

(ii)     authorizing the Debtors to execute and deliver the DIP Credit Agreement and all

other related documents and agreements (collectively, the "**DIP Loan Documents**") and to

perform such other acts as may be necessary or desirable in connection with the DIP Loan

Documents;[2] and

---

[2]     Capitalized terms used but not defined have the meanings given to them in the DIP Loan Documents.

Page: 3
Debtors: In re 155 Route 10 Associates, Inc., *et al.*
Case No. 12-24414 (NLW)
Caption: Interim Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364 And 507 (1) Approving Postpetition
Financing, (2) Authorizing Use Of Cash Collateral, (3) Granting Liens And Providing Superpriority
Administrative Expense Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay, And (6)
Scheduling A Final Hearing

---

(iii)    granting the DIP Facility and all obligations owing thereunder and under the DIP

Loan Documents to the DIP Lender (collectively, and including all "Obligations" as described in

the DIP Credit Agreement, respectively, and, together, the "**DIP Obligations**") allowed

superpriority administrative expense claim status in each of the Cases and any Successor Cases

(as defined herein), subject to the priorities set forth herein; and

(iv)    granting to the DIP Lender automatically perfected security interests in and liens

on all of the DIP Collateral (as defined herein), including, without limitation, all property

constituting "Cash Collateral," as defined in section 363(a) of the Bankruptcy Code, which liens

shall be subject to the priorities set forth herein; and

(v)    authorizing and directing the Debtors to pay the principal, interest, fees, expenses

and other amounts payable under each of the DIP Loan Documents as they become due,

including, without limitation, continuing commitment or unused line fees, closing fees, servicing

fees, audit fees, structuring fees, monitoring and success fees, the reasonable fees and

disbursements of the DIP Lender's attorneys, advisers, accountants, and other consultants, and

the legal expenses of the DIP Lender, all to the extent provided by and in accordance with the

terms of the respective DIP Loan Documents; and

(vi)    authorizing and directing the Debtors to pay the Prepetition Senior Obligations (as

defined herein), subject to the rights of parties in interest described in paragraphs 35 and 36 of

this Interim Order;

(vii)    providing adequate protection to the Prepetition Subordinated Lender (as defined

herein) to the extent set forth herein;

Page: 4
Debtors: In re 155 Route 10 Associates, Inc., *et al.*
Case No. 12-24414 (NLW)
Caption: Interim Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364 And 507 (1) Approving Postpetition
Financing, (2) Authorizing Use Of Cash Collateral, (3) Granting Liens And Providing Superpriority
Administrative Expense Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay, And (6)
Scheduling A Final Hearing

---

(viii)    vacating and modifying the automatic stay imposed by section 362 of the

Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of

the DIP Loan Documents and this Interim Order; and

(ix)    scheduling a final hearing (the "Final Hearing") to consider the relief requested in

the DIP Motion and approving the form of notice with respect to the Final Hearing.

The Court having considered the DIP Motion, the Declaration of Joseph Catalano, the

Debtors' President, in support of the Chapter 11 petitions and first day motions, including the

DIP Motion, the exhibits attached thereto, the DIP Loan Documents, and the evidence submitted

or adduced and the arguments of counsel made at the interim hearing held on the DIP Motion

(the "**Interim Hearing**"); and notice of the Interim Hearing having been given in accordance

with Bankruptcy Rules 4001(b), (c) and (d), 9014, and D.N.J. LBR 4001-4; and the Interim

Hearing to consider the interim relief requested in the DIP Motion having been held and

concluded; and all objections, if any, to the interim relief requested in the DIP Motion having

been withdrawn, resolved or overruled by the Court; and it appearing to the Court that granting

the interim relief requested is necessary to avoid immediate and irreparable harm to the Debtors

and their estates pending the Final Hearing, and otherwise is fair and reasonable and in the best

interests of the Debtors, their estates, and their creditors and equity holders, and is essential for

the continued operation of the Debtors' businesses; and after due deliberation and consideration,

and for good and sufficient cause appearing therefor;

BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING BY THE

DEBTORS, INCLUDING THE SUBMISSIONS OF DECLARATIONS AND THE

Page: 5
Debtors: In re 155 Route 10 Associates, Inc., *et al.*
Case No. 12-24414 (NLW)
Caption: Interim Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364 And 507 (1) Approving Postpetition Financing, (2) Authorizing Use Of Cash Collateral, (3) Granting Liens And Providing Superpriority Administrative Expense Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay, And (6) Scheduling A Final Hearing

---

REPRESENTATIONS OF COUNSEL, THE COURT HEREBY MAKES THE FOLLOWING

FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.    *Petition Date*. On June 5, 2012 (the "**Petition Date**"), each of the Debtors filed a separate voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey (the "**Court**") commencing these Cases.

B.    *Debtors in Possession*.  The Debtors are continuing in the management and operation of their businesses and properties as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Cases.

C.    *Jurisdiction and Venue*.  This Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over these proceedings, and over the persons and property affected hereby. Consideration of the DIP Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue for the Cases and proceedings on the DIP Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D.    *Committee Formation*.  As of the date hereof, the Office of the United States Trustee (the "U.S. Trustee") has not yet appointed any official committee in these Cases pursuant to Section 1102 of the Bankruptcy Code (each, a "**Statutory Committee**").

E.    *Debtors' Stipulations*.  After consultation with their attorneys and financial advisors, and without prejudice to the rights of parties in interest as set forth in paragraph 35 herein, the Debtors (on behalf of and for themselves) admit, stipulate, acknowledge and agree that (collectively, paragraphs E(i) through E(viii) below are referred to herein as the "**Debtors' Stipulations**"):

Page: 6
Debtors: In re 155 Route 10 Associates, Inc., *et al.*
Case No. 12-24414 (NLW)
Caption: Interim Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364 And 507 (1) Approving Postpetition
Financing, (2) Authorizing Use Of Cash Collateral, (3) Granting Liens And Providing Superpriority
Administrative Expense Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay, And (6)
Scheduling A Final Hearing

---

(i)    *Prepetition Senior Credit Documents*.  As of the Petition Date, the Debtor

Parties had outstanding secured debt to First Niagara Commercial Finance, Inc. (as successor in

interest to NewAlliance Bank) (the "**Prepetition Senior Lender**"), pursuant to that certain

Credit and Security Agreement effective and delivered as of October 6, 2010 by and between

SDA and the Prepetition Senior Lender (as amended from time to time, the "**Prepetition Senior**

**Credit Agreement**" and together with all related documents, guaranties and agreements, the

"**Prepetition Senior Credit Documents**").

(ii)    *Prepetition Senior Obligations*.  As of the Petition Date, the outstanding

principal amount owed by the Debtor Parties under the Prepetition Senior Credit Documents was

not less than $3,767,806.50, including $57,600 of issued and outstanding letters of credit

(collectively, together with any amounts paid, incurred or accrued prior to the Petition Date in

accordance with the Prepetition Senior Credit Documents, including all "Indebtedness" as

described in the Prepetition Senior Credit Agreement, the "**Prepetition Senior Obligations**").

As more fully set forth in the Prepetition Senior Credit Documents, prior to the Petition Date, the

Debtor Parties granted first-priority security interests in and liens on substantially all personal

and real property of the Debtors, including owned real estate, accounts, inventory, equipment

and general intangibles (collectively, the "**Prepetition Collateral**")[3] to the Prepetition Senior

---

[3] For avoidance of doubt, Prepetition Collateral does not include the AB7-Creditors' Portion and the AB7-Creditor
Note Portion, both of which are not property of the Debtors (collectively, the "**Excluded Collateral**"), as both terms
are defined in the Fourth Amended Joint Plan of Reorganization Proposed by Autobacs Strauss Inc. and the Official
Committee of Unsecured Creditors, dated September 15, 2010, and confirmed in the Chapter 11 case of *In re
Autobacs Strauss, Inc.*, Case No. 09-10358 (Bankr. D. Del.) (CSS).

Page: 7
Debtors: In re 155 Route 10 Associates, Inc., *et al.*
Case No. 12-24414 (NLW)
Caption: Interim Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364 And 507 (1) Approving Postpetition Financing, (2) Authorizing Use Of Cash Collateral, (3) Granting Liens And Providing Superpriority Administrative Expense Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay, And (6) Scheduling A Final Hearing

Lender (collectively, the "**Prepetition Senior Liens**") to secure repayment of the Prepetition Senior Obligations.

(iii)    *Prepetition Subordinated Credit Documents.*    As of the Petition Date, SDA also had outstanding secured debt to Edward A. Phillips, as Trustee of the ABS Creditor Trust (in such capacity, the "**Prepetition Subordinated Lender**", and together with the Prepetition Senior Lender, the "**Prepetition Secured Creditors**") pursuant to that certain Credit Agreement effective and delivered as of October 6, 2010 (as amended from time to time, the "**Prepetition Subordinated Credit Agreement**", and together with all related documents, guaranties and agreements, the "**Prepetition Subordinated Credit Documents**"; the Prepetition Subordinated Credit Documents and the Prepetition Senior Credit Documents are collectively referred to herein as the "**Prepetition Credit Documents**").

(iv)    *Prepetition Subordinated Obligations.*    As of the Petition Date, the outstanding principal amount owed by the SDA under the Prepetition Subordinated Credit Documents was not less than $8,500,000 (collectively, together with any amounts paid, incurred or accrued prior to the Petition Date in accordance with the Prepetition Subordinated Credit Documents, the "**Prepetition Subordinated Obligations**" and together with the Prepetition Senior Obligations, the "**Prepetition Secured Obligations**"). As more fully set forth in the Prepetition Subordinated Credit Documents, prior to the Petition Date, SDA granted second-priority security interests in and liens on the Prepetition Collateral to the Prepetition Subordinated Lender (collectively, the "**Prepetition Subordinated Liens**" and together with the

Page: 8
Debtors: In re 155 Route 10 Associates, Inc., *et al.*
Case No. 12-24414 (NLW)
Caption: Interim Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364 And 507 (1) Approving Postpetition
Financing, (2) Authorizing Use Of Cash Collateral, (3) Granting Liens And Providing Superpriority
Administrative Expense Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay, And (6)
Scheduling A Final Hearing

Prepetition Senior Liens, the "**Prepetition Liens**") to secure repayment of the Prepetition

Subordinated Obligations.

(v)     *Subordination Agreement.*  Each of the Prepetition Secured Creditors and

the Debtor Parties entered into an Intercreditor and Subordination Agreement made as of

October 6, 2010 (as amended from time to time, the "**Subordination Agreement**"), pursuant to

which the Prepetition Subordination Lender agreed, among other things and as more specifically

set forth therein, that (A) the Prepetition Subordinated Obligations are subordinated to the prior

payment in full of the Prepetition Senior Obligations, and (B) the Prepetition Subordinated Liens

are subordinate and junior to the Prepetition Senior Liens.

(vi)     *Validity, Perfection and Priority of Prepetition Liens and Obligations.*

The Debtors (for themselves and their estates only, and without limiting the rights of other

parties in interest under paragraphs 35 and 36 of this Interim Order) acknowledge and agree that:

(a) as of the Petition Date, the Prepetition Liens on the Prepetition Collateral are valid, binding,

enforceable, non-avoidable and properly perfected, and the Prepetition Senior Liens are senior in

priority to the Prepetition Subordinated Liens, (b) as of the Petition Date, the Prepetition Liens

have priority over any and all other liens, if any, on the Prepetition Collateral, subject only to

certain other liens otherwise permitted by the Prepetition Credit Documents (to the extent any

such permitted liens were valid, binding, enforceable, properly perfected, non-avoidable and

senior in priority to the Prepetition Liens as of the Petition Date, the "**Prepetition Permitted**

Page: 9
Debtors: In re 155 Route 10 Associates, Inc., *et al.*
Case No. 12-24414 (NLW)
Caption: Interim Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364 And 507 (1) Approving Postpetition Financing, (2) Authorizing Use Of Cash Collateral, (3) Granting Liens And Providing Superpriority Administrative Expense Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay, And (6) Scheduling A Final Hearing

---

**Liens**") and otherwise had priority over any and all other liens on the Prepetition Collateral;[4] (d) the Prepetition Secured Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors; (e) no offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Liens or the Prepetition Secured Obligations exist, and no portion of the Prepetition Liens or the Prepetition Secured Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (whether equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (f) the Debtors and their estates have no claims, objections, challenges, causes of actions, and/or choses in action, including without limitation, avoidance claims under Chapter 5 of the Bankruptcy Code, against any of the Prepetition Secured Creditors or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors or employees arising out of, based upon or related to the Prepetition Credit Documents; (g) as of the Petition Date, the value of the Prepetition Collateral securing the Prepetition Senior Obligations exceeded the amount of those obligations, and accordingly the Prepetition Senior Obligations are allowed secured claims within the meaning of Section 506 of the Bankruptcy Code, in a principal amount of not less than $3,710,206.50 and

---

[4] For purposes of this Interim Order, Prepetition Permitted Liens shall include all liens that were valid, senior, enforceable, nonavoidable, prior and perfected under applicable law as of the Petition Date. Nothing herein shall constitute a finding or ruling by this Court that any such Prepetition Permitted Liens are valid, senior, enforceable, prior, perfected or non-avoidable. Moreover, nothing shall prejudice the rights of any party in interest including, but not limited, to the Debtors, the DIP Lender, and any Statutory Committee to challenge the validity, priority, enforceability, seniority, avoidability, perfection or extent of any such Prepetition Permitted Lien and/or security interest.

Page: 10
Debtors: In re 155 Route 10 Associates, Inc., *et al.*
Case No. 12-24414 (NLW)
Caption: Interim Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364 And 507 (1) Approving Postpetition Financing, (2) Authorizing Use Of Cash Collateral, (3) Granting Liens And Providing Superpriority Administrative Expense Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay, And (6) Scheduling A Final Hearing

---

$56,700 of issued and outstanding letters of credit, together with accrued and unpaid interest, fees (including, without limitation, attorneys' fees and related expenses).

(vii)    *Cash Collateral.*  The Debtors represent that all of the Debtors' cash, including the cash in their deposit accounts, wherever located, whether as original collateral or proceeds of other Prepetition Collateral, constitute Cash Collateral and is Prepetition Collateral of the Prepetition Secured Creditors.

(viii)    *Default by the Debtors.*  The Debtors acknowledge and stipulate that the Debtors are in default under the Prepetition Senior Credit Documents and the Prepetition Subordinated Credit Documents.

F.    *Findings Regarding the Postpetition Financing.*

(i)    *Request for Postpetition Financing.*  The Debtors seek authority to (a) enter into the DIP Facility on the terms described herein and in the DIP Loan Documents, (b) repay the Prepetition Senior Obligations and (c) use Cash Collateral on the terms described herein to administer their Cases and fund their operations.  At the Final Hearing, the Debtors will seek final approval of the proposed postpetition financing arrangements and use of Cash Collateral arrangements pursuant to a proposed final order (the "**Final Order**"), which shall be in form and substance acceptable to the DIP Lender.  Notice of the Final Hearing and Final Order will be provided in accordance with this Interim Order.

(ii)    *Priming of the Prepetition Liens.*  The priming of the Prepetition Subordinated Liens on the Prepetition Collateral by the DIP Liens will enable the Debtors to obtain the DIP Facility to preserve and maximize the value of their assets for the benefit of their

Page: 11
Debtors: In re 155 Route 10 Associates, Inc., *et al.*
Case No. 12-24414 (NLW)
Caption: Interim Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364 And 507 (1) Approving Postpetition Financing, (2) Authorizing Use Of Cash Collateral, (3) Granting Liens And Providing Superpriority Administrative Expense Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay, And (6) Scheduling A Final Hearing

estates and creditors. The Prepetition Subordinated Lender does not object to such priming liens and is entitled to receive adequate protection of its interests as more fully described below.

(iii)    *Need for Postpetition Financing and Use of Cash Collateral.*    The Debtors' need to use Cash Collateral and to obtain credit pursuant to the DIP Facility is immediate and critical in order to enable the Debtors to continue operations and to administer and preserve the value of their estates. The ability of the Debtors to finance their operations, maintain business relationships, to pay their employees, protect the value of their assets and otherwise finance their operations requires the availability of working capital from the DIP Facility and the use of Cash Collateral, the absence of either of which would immediately and irreparably harm the Debtors, their estates, their creditors and equity holders, and the possibility for a successful administration of these Cases. The Debtors do not have sufficient available sources of working capital and financing to operate their businesses or to maintain their properties in the ordinary course of business without the DIP Facility and authorized use of Cash Collateral.

(iv)    *No Credit Available on More Favorable Terms.*    Given their current financial condition, financing arrangements, and capital structure, the Debtors are unable to obtain financing from sources other than the DIP Lender on terms more favorable than the DIP Facility. The Debtors have been unable to obtain unsecured credit allowable under Bankruptcy Code Section 503(b)(1) as an administrative expense. The Debtors have also been unable to obtain credit: (a) having priority over that of administrative expenses of the kind specified in Sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; (b) secured by a lien on property of

Page: 12
Debtors: In re 155 Route 10 Associates, Inc., *et al.*
Case No. 12-24414 (NLW)
Caption: Interim Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364 And 507 (1) Approving Postpetition
Financing, (2) Authorizing Use Of Cash Collateral, (3) Granting Liens And Providing Superpriority
Administrative Expense Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay, And (6)
Scheduling A Final Hearing

the Debtors and their estates that is not otherwise subject to a lien; or (c) secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien. Financing on a postpetition basis is not otherwise available without granting the DIP Lender, (1) perfected security interests in and liens on (each as provided herein) all of the Debtors' existing and after-acquired assets, except the Excluded Collateral, with the priorities set forth herein, (2) superpriority claims, and (3) the other protections set forth in this Interim Order.

(v) *Use of Proceeds of the DIP Facility.* As a condition to entry into the DIP Credit Agreement, the extensions of credit under the DIP Facility and the authorization to use Cash Collateral, the DIP Lender requires, and the Debtors have agreed, that proceeds of the DIP Facility shall be used (a) for the repayment in full in cash of the Prepetition Senior Obligations on the Closing Date as provided in that certain payoff letter by the Prepetition Senior Lender (the "**Payoff Letter**", a copy of which has been provided to the DIP Lender and the Prepetition Subordinated Lender), and, (b) in a manner consistent with the terms and conditions of the DIP Loan Documents and in accordance with the budget (a copy of which is attached as <u>Exhibit A</u> hereto), as the same may be modified from time to time consistent with the terms of the DIP Loan Documents, and subject to such variances as may be permitted thereby, the "**Budget**"), solely for (i) post-petition operating expenses and other working capital, (ii) certain transaction fees and expenses, (iii) permitted payment of costs of administration of the Cases, including professional fees, and (iv) as otherwise permitted under the DIP Loan Documents, as applicable. The repayment of the Prepetition Senior Obligations in accordance with this Interim Order and the Payoff Letter is necessary, as the Prepetition Senior Lender has not otherwise consented to

Page: 13
Debtors: In re 155 Route 10 Associates, Inc., *et al.*
Case No. 12-24414 (NLW)
Caption: Interim Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364 And 507 (1) Approving Postpetition Financing, (2) Authorizing Use Of Cash Collateral, (3) Granting Liens And Providing Superpriority Administrative Expense Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay, And (6) Scheduling A Final Hearing

the use of its Cash Collateral or the subordination of its liens to the DIP Liens, and the DIP

Lender is not willing to provide the DIP Facility unless the Prepetition Senior Obligations are

paid in full upon the closing of the DIP Facility (subject to the terms of the Payoff Letter). Such

payments will not prejudice the Debtors or their estates, because payment of such amounts is

subject to the rights of parties in interest under paragraphs 35 and 36 herein.

(vi)    *Application of Proceeds of DIP Collateral.* As a condition to entry into

the DIP Loan Documents, the extension of credit under the DIP Facility, and the authorization to

use Cash Collateral, the Debtors and the DIP Lender have agreed that the proceeds of DIP

Collateral (as defined herein) shall be applied in accordance with paragraph 19 of this Interim

Order.

G.    *Adequate Protection.*

(i)    The Debtors shall, for the benefit of the Prepetition Senior Lender only,

pay, subject to paragraph 36, the amounts required under the Payoff Letter upon closing of the

DIP Facility. Because of such payment, and the provisions of the Payoff Letter, there is no need

to provide adequate protection to the Prepetition Senior Lender. The Prepetition Subordinated

Lender is entitled to receive adequate protection of the Prepetition Subordinated Obligations to

the extent any remain outstanding during the Cases. Pursuant to Sections 361, 363 and 507(b),

the Prepetition Subordinated Lender shall receive, subject to the priorities set forth in paragraphs

12 and 13 below, the Adequate Protection Lien (as defined herein) and the Adequate Protection

Superpriority Claim. For the avoidance of doubt, the Adequate Protection Lien and the

Adequate Protection Superpriority Claim each shall be junior in all respects to the DIP Liens, the

Page: 14
Debtors: In re 155 Route 10 Associates, Inc., *et al.*
Case No. 12-24414 (NLW)
Caption: Interim Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364 And 507 (1) Approving Postpetition Financing, (2) Authorizing Use Of Cash Collateral, (3) Granting Liens And Providing Superpriority Administrative Expense Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay, And (6) Scheduling A Final Hearing

DIP Carve Out and the Junior Carve Out (as defined herein), and the Adequate Protection Superpriority Claim is junior in all respects to the DIP Superpriority Claim (as defined herein).

H.    *Sections 506(c) and 552(b)*.    In light of (i) the DIP Lender's agreement to subordinate its liens and superpriority claims, as applicable, to the DIP Carve Out (as defined herein); and (ii) the Prepetition Subordinated Lender's agreement to subordinate the Adequate Protection Superpriority Claim and the Adequate Protection Lien to the DIP Carve Out and the Junior Carve Out, the DIP Liens, and the DIP Superpriority Claims, in each case as applicable, upon entry of the Final Order, each of the DIP Lender and the Prepetition ~~Subordinated Lender~~ *Secured Creditors* are entitled to a waiver of (a) the provisions of Section 506(c) of the Bankruptcy Code, and (b) any "equities of the case" claims under Section 552(b) of the Bankruptcy Code.

I.    *Good Faith of the DIP Lender*.

(i)    *Willingness to Provide Financing*.    The DIP Lender has indicated a willingness to provide financing to the Debtors subject to: (a) the entry of this Interim Order and the Final Order; (b) approval of the terms and conditions of the DIP Facility and the DIP Loan Documents and the payoff of the Prepetition Senior Obligations; and (c) entry of findings by this Court that such financing is essential to the Debtors' estates, that the DIP Lender is extending credit to the Debtors pursuant to the DIP Loan Documents in good faith, and that the DIP Lender's claims, superpriority claims, security interests, liens, rights, and other protections granted pursuant to this Interim Order and the DIP Loan Documents will have the protections provided in Section 364(e) of the Bankruptcy Code and will not be affected by any subsequent

Page: 15
Debtors: In re 155 Route 10 Associates, Inc., *et al.*
Case No. 12-24414 (NLW)
Caption: Interim Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364 And 507 (1) Approving Postpetition
Financing, (2) Authorizing Use Of Cash Collateral, (3) Granting Liens And Providing Superpriority
Administrative Expense Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay, And (6)
Scheduling A Final Hearing

reversal, modification, vacatur, amendment, reargument or reconsideration of this Interim Order

or any other order.

(ii)     *Business Judgment and Good Faith Pursuant to Section 364(e)*.   The

terms and conditions of the DIP Facility and the DIP Loan Documents, and the fees paid and to

be paid thereunder, are fair, reasonable, and the best available to the Debtors under the

circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their

fiduciary duties, and are supported by reasonably equivalent value and consideration.  The DIP

Facility and the use of Cash Collateral were negotiated in good faith and at arms' length among

the Debtors and the DIP Lender.  Use of Cash Collateral and credit to be extended under the DIP

Facility shall be deemed to have been so allowed, advanced, made, used or extended in good

faith, and for valid business purposes and uses, within the meaning of Section 364(e) of the

Bankruptcy Code, and the DIP Lender is therefore entitled to the protection and benefits of

Section 364(e) of the Bankruptcy Code and this Interim Order.

J.     *Notice*.  Notice of the Interim Hearing and the emergency relief requested in the

DIP Motion has been provided by the Debtors, whether by facsimile, email, overnight courier or

hand delivery, to certain parties in interest, including:  (i) the U.S. Trustee for the District of New

Jersey; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the

parties included on the Debtors' consolidated list of thirty (30) largest unsecured creditors; (v)

counsel to each of the Prepetition Secured Creditors; (vi) GE Money Bank; (vii) Local 888-

UFCW-AFL-CIO; (viii) Local 108-RWDS-AFL-CIO; (ix) UFCW Local 1776 & Participating

Employers; (x) IBM Credit LLC; (xi) Mitsubishi UFJ Lease & Finance Inc.; (xii) Crown Credit

Page: 16
Debtors: In re 155 Route 10 Associates, Inc., et al.
Case No. 12-24414 (NLW)
Caption: Interim Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364 And 507 (1) Approving Postpetition
Financing, (2) Authorizing Use Of Cash Collateral, (3) Granting Liens And Providing Superpriority
Administrative Expense Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay, And (6)
Scheduling A Final Hearing

Company; and (xiii) the Pension Benefit Guaranty Corporation ("PBGC"). The parties have

made reasonable efforts to afford the best notice possible under the circumstances and such

notice is good and sufficient to permit the interim relief set forth in this Interim Order, and no

other or further notice is or shall be required.

Based upon the foregoing findings and conclusions, the DIP Motion and the record

before the Court with respect to the DIP Motion, and good and sufficient cause appearing

therefor,

IT IS HEREBY ORDERED that:

1.     Interim Financing Approved.  The DIP Motion is granted, the Interim Financing

(as defined herein) is authorized and approved, and the use of Cash Collateral on an interim basis

is authorized, subject to the terms and conditions set forth in this Interim Order.

2.     Objections Overruled.  All objections to the Interim Financing to the extent not

withdrawn or resolved are hereby overruled.

**DIP Facility Authorization**

3.     Authorization of the DIP Financing, DIP Loan Documents and Payoff Letter.  The

Debtors are expressly and immediately authorized, empowered and directed to execute and

deliver the DIP Loan Documents and the Payoff Letter, to incur and to perform the DIP

Obligations in accordance with, and subject to the terms of this Interim Order, the DIP Loan

Documents and the Payoff Letter, to deliver all instruments and documents that may be

necessary or required for performance by the Debtors under the DIP Facility and the creation and

perfection of the DIP Liens described in and provided for by this Interim Order and the DIP

Page: 17
Debtors: In re 155 Route 10 Associates, Inc., *et al.*
Case No. 12-24414 (NLW)
Caption: Interim Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364 And 507 (1) Approving Postpetition
Financing, (2) Authorizing Use Of Cash Collateral, (3) Granting Liens And Providing Superpriority
Administrative Expense Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay, And (6)
Scheduling A Final Hearing

Loan Documents, and, subject to the rights of third parties pursuant to paragraphs 35 and 36

below, to pay and perform all obligations under the Payoff Letter in accordance with the terms

set forth therein and in this Interim Order, including to repay in full the Prepetition Senior

Obligations. The Debtors are hereby authorized and directed to pay the principal, interest, fees,

expenses and other amounts described in the DIP Loan Documents as such become due and

without need to obtain further Court approval, including, without limitation, closing fees, unused

facility fees, continuing commitment fees, monitoring and success fees, servicing fees, audit

fees, structuring fees, the reasonable fees and disbursements of the DIP Lender's attorneys,

advisers, accountants, and other consultants, whether or not the transactions contemplated hereby

are consummated, all to the extent provided in the DIP Loan Documents, with invoices to be

provided in accordance with paragraph 28 below.  All collections and proceeds, whether from

ordinary course collections, asset sales, debt issuances, insurance recoveries, condemnations or

otherwise, will be deposited and applied as required by this Interim Order and the DIP Loan

Documents.  Upon execution and delivery, the DIP Loan Documents shall represent valid and

binding, and joint and several, obligations of the Debtors, enforceable against each of the

Debtors and their estates in accordance with their terms.   Upon execution and delivery, the

Payoff Letter shall represent a valid and binding obligation of the Debtors, enforceable against

each of the Debtors and their estates in accordance with their terms, but subject to the rights of

third parties pursuant to paragraphs 35 and 36 below.

     4.    <u>Authorization to Borrow</u>.  Until the Termination Date (as defined in the DIP

Credit Agreement), and subject to the terms, conditions, limitations on availability and reserves

Page: 18
Debtors: In re 155 Route 10 Associates, Inc., *et al.*
Case No. 12-24414 (NLW)
Caption: Interim Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364 And 507 (1) Approving Postpetition Financing, (2) Authorizing Use Of Cash Collateral, (3) Granting Liens And Providing Superpriority Administrative Expense Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay, And (6) Scheduling A Final Hearing

---

set forth in the DIP Loan Documents, the DIP Facility, and this Interim Order, and in order to prevent immediate and irreparable harm to the Debtors' estates, the Debtors are hereby authorized to (a) request extensions of revolving credit under the DIP Facility up to an aggregate principal amount of $10 million at any one time outstanding (the "**Interim Financing**"). Notwithstanding the foregoing, the Debtors may not request or incur borrowings in excess of $6,000,000.00 in the aggregate principal amount outstanding under the DIP Facility prior to the entry of the Final Order.

5.     <u>DIP Obligations</u>.    The DIP Loan Documents and this Interim Order shall constitute and evidence the validity and binding effect of the Debtors' DIP Obligations, which DIP Obligations shall be enforceable against the Debtors, their estates and any successors thereto, including without limitation, any trustee or other estate representative appointed in the Cases, or any case under Chapter 7 of the Bankruptcy Code upon the conversion of any of the Cases (collectively, "**Successor Cases**").  Upon entry of this Interim Order, the DIP Obligations will include all loans and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by any of the Debtors to the DIP Lender under the DIP Loan Documents or this Interim Order, including, without limitation, all principal, accrued interest, costs, fees, expenses and other amounts owed pursuant to the DIP Loan Documents, and shall be joint and several obligations of the Debtors in all respects.

6.     <u>Postpetition Liens and Collateral</u>.

(a)     Effective immediately upon the entry of this Interim Order, pursuant to sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, the DIP Lender is hereby

Page: 19
Debtors: In re 155 Route 10 Associates, Inc., *et al.*
Case No. 12-24414 (NLW)
Caption: Interim Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364 And 507 (1) Approving Postpetition Financing, (2) Authorizing Use Of Cash Collateral, (3) Granting Liens And Providing Superpriority Administrative Expense Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay, And (6) Scheduling A Final Hearing

---

granted, continuing valid, binding, enforceable, non-avoidable and automatically and properly perfected postpetition security interests in and liens on (collectively, the "**DIP Liens**") any and all presently owned and hereafter acquired assets and real and personal property of the Debtors, including, without limitation, the following (the "**DIP Collateral**")[5]:

    (i)    all Accounts[6] (including health care receivables);

    (ii)    all Chattel Paper (whether tangible or intangible);

    (iii)    all Documents (including, if applicable, electronic documents);

    (iv)    all General Intangibles (including, without limitation, any payment intangibles, Software, and Intellectual Property);

    (v)    all Goods (including, without limitation Inventory, Equipment and Fixtures);

    (vi)    all Instruments;

    (vii)    all Investment Property, Stock and other equity interests of any type or nature whatsoever;

    (viii)    all Deposit Accounts, including Local Deposit Accounts, Concentration Accounts, Disbursement Accounts, and all other bank accounts and all deposits therein;

    (ix)    all money, cash or cash equivalents;

---

[5] For avoidance of doubt, DIP Collateral shall not include the Excluded Collateral.

[6] All defined terms in the description of DIP Collateral shall have the meanings ascribed thereto in the DIP Loan Documents. All terms not specifically defined in the DIP Loan Documents shall have the meanings ascribed to such terms in Article 8 or 9 of the Uniform Commercial Code.

Page: 20
Debtors: In re 155 Route 10 Associates, Inc., *et al.*
Case No. 12-24414 (NLW)
Caption: Interim Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364 And 507 (1) Approving Postpetition
Financing, (2) Authorizing Use Of Cash Collateral, (3) Granting Liens And Providing Superpriority
Administrative Expense Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay, And (6)
Scheduling A Final Hearing

(x)    all credit balances, deposits and other property now or hereafter held of

received by or in transit to any DIP Agent, or any DIP Lender or their respective affiliates or at

any other depository or other institution from or for the account of any Debtor, whether for

safekeeping, pledge, custody, transmission, collection or otherwise;

(xi)    all Supporting Obligations and Letter of Credit Rights (whether or not any

such Letter of Credit is in writing) of the Debtors;

(xii)    all commercial tort claims;

(xiii)    all proceeds of leases of real property and all owned real property;[7]

(xiv)    effective upon the entry of the Final Order, all claims or causes of action

or the proceeds thereof to avoid a transfer of property (or an interest in property) or an obligation

incurred by the Debtors pursuant to any applicable section of the Bankruptcy Code, including,

without limitation, chapter 5 and section 724(a) of the Bankruptcy Code (the "Avoidance

Actions");

(xv)    effective upon the entry of the Final Order, the Debtors' rights under

Section 506(c) of the Bankruptcy Code and the proceeds thereof;

(xvi)    to the extent not otherwise described above, all receivables and all present

and future claims, rights, interests, assets and properties recovered by or on behalf of any Debtor;

(xvii)    all books, records, and information relating to any of the foregoing and/or

to the operation of any Debtor's business, and all rights of access to such books, records, and

---

[7] For the avoidance of doubt, the DIP Liens extend only to the proceeds of leased real property and are not direct liens on the Debtors' leases of real property unless such liens are expressly permitted pursuant to the underlying lease documents.

Page: 21
Debtors: In re 155 Route 10 Associates, Inc., *et al.*
Case No. 12-24414 (NLW)
Caption: Interim Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364 And 507 (1) Approving Postpetition
Financing, (2) Authorizing Use Of Cash Collateral, (3) Granting Liens And Providing Superpriority
Administrative Expense Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay, And (6)
Scheduling A Final Hearing

information, and all property in which such books, records and information are stored, recorded

and maintained; and

(xviii) to the extent not otherwise included, all Proceeds, tort claims, insurance

claims, contract rights, rights to the payment of money, and other rights to payment not

otherwise included in the foregoing and products of the foregoing and all accessions to,

substitutions and replacements for, and rents and profits of, each of the foregoing.

(b)    Effective upon the entry of the Interim Order and the payment of the

Payoff Amount (as defined in the Payoff Letter), all DIP Liens and the DIP Carve Out shall each

be and remain at all times senior to the Prepetition Liens, and all existing blocked account

agreements, deposit control agreements, securities account agreements, credit card

acknowledgements, credit card agreements, landlord agreements, warehouse agreements, bailee

agreements, customs broker agreements, freight forwarder agreements or filings with the United

States Patent and Trademark Office or the Library of Congress with respect to the recordation of

an interest in intellectual property which were filed by the Prepetition Senior Lender on any

Debtors' assets (real or personal) shall be deemed terminated.  Except as provided in the Payoff

Letter, effective upon the entry of this Interim Order and the Payoff Effective Time, any and all

interests of the Prepetition Senior Lender in the Debtors' assets and properties shall terminate

and the Debtors, their counsel and counsel to the DIP Lender each are expressly and immediately

authorized and empowered to execute and deliver applicable documents (which may include a

copy of this Interim Order) evidencing the termination of such interests.

7.    <u>DIP Lien Priority</u>.

Page: 22
Debtors: In re 155 Route 10 Associates, Inc., *et al.*
Case No. 12-24414 (NLW)
Caption: Interim Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364 And 507 (1) Approving Postpetition Financing, (2) Authorizing Use Of Cash Collateral, (3) Granting Liens And Providing Superpriority Administrative Expense Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay, And (6) Scheduling A Final Hearing

(a)    *DIP Liens*. The DIP Liens shall be junior only to the (i) DIP Carve Out, and (ii) the Prepetition Permitted Liens, and shall otherwise be senior in priority and superior to the Prepetition Liens, the Adequate Protection Lien (as defined below) and Adequate Protection Superpriority Claim and any other security, mortgage, collateral interest, lien or claim on or to any of the DIP Collateral.

(b)    Other than as set forth herein or as further ordered by the Court, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Cases or any Successor Cases. The DIP Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Cases or any Successor Cases, upon the conversion of any of the Cases to a case under Chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of any of the Cases or Successor Cases. The DIP Liens shall not be subject to challenge under Sections 510, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to Section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Liens.

(c)    *Prepetition Liens*. For the avoidance of doubt, the Prepetition Liens shall be junior to the (i) DIP Carve Out and the DIP Superpriority Claim; (ii) DIP Liens; (iii) the Adequate Protection Lien described in paragraph 12 below; (iv) the Adequate Protection Superpriority Claim; (v) Prepetition Permitted Liens, and (vi) in reference to the Prepetition Subordinated Liens, shall be junior to the Junior Carve Out.

8.    <u>DIP Superpriority Claim</u>.

Page: 23
Debtors: In re 155 Route 10 Associates, Inc., *et al.*
Case No. 12-24414 (NLW)
Caption: Interim Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364 And 507 (1) Approving Postpetition Financing, (2) Authorizing Use Of Cash Collateral, (3) Granting Liens And Providing Superpriority Administrative Expense Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay, And (6) Scheduling A Final Hearing

(a)      *DIP Lender Superpriority Claim.*  Upon entry of this Interim Order, the DIP Lender is hereby granted, pursuant to Section 364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative expense claim in each of the Cases and any Successor Cases (collectively, the "**DIP Superpriority Claim**") for all DIP Obligations.  The DIP Superpriority Claim shall be subordinate only to the DIP Carve Out and Prepetition Permitted Liens, and shall otherwise have priority over any and all administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code Sections 503(b) and 507(b), as provided under Section 364(c)(1) of the Bankruptcy Code.

(b)      *Priority of DIP Superpriority Claim.* The DIP Superpriority Claim shall be payable from and have recourse to all pre- and post-petition property of the Debtors and all proceeds thereof, subject only  to the payment in full in cash of the DIP Carve Out and Prepetition Permitted Liens.  If necessary, upon entry of the Final Order, the DIP Superpriority Claim shall be payable from or have recourse to Avoidance Actions.

9.      No Obligation to Extend Credit.  The DIP Lender shall not have any obligation to make any loan or advance under the DIP Loan Documents unless all of the conditions precedent to the making of such extension of credit or the issuance of such letter of credit under the applicable DIP Loan Documents and this Interim Order have been satisfied in full or waived by the DIP Lender in its sole discretion.

10.      Use of DIP Facility Proceeds.  From and after the Petition Date, the Debtors shall use advances of credit under the DIP Facility only for the purposes specifically set forth in this

Page: 24
Debtors: In re 155 Route 10 Associates, Inc., *et al.*
Case No. 12-24414 (NLW)
Caption: Interim Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364 And 507 (1) Approving Postpetition Financing, (2) Authorizing Use Of Cash Collateral, (3) Granting Liens And Providing Superpriority Administrative Expense Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay, And (6) Scheduling A Final Hearing

Interim Order, the DIP Loan Documents, the Payoff Letter, and in compliance with the Budget, a copy of which has been delivered to the DIP Lender and the Prepetition Subordinated Lender.

**Authorization to Use Cash Collateral**

11.    <u>Authorization to Use Cash Collateral</u>.  Subject to the terms and conditions of this Interim Order and the DIP Loan Documents, and in accordance with the Budget, the Debtors are authorized to use Cash Collateral until the Termination Date; <u>provided</u>, <u>however</u>, that during the Remedies Notice Period (as defined herein) the Debtors may use Cash Collateral in accordance with the terms and provisions of the Budget solely to meet payroll and to pay expenses critical to the preservation of the Debtors and their estates as agreed by the DIP Lender, in its sole discretion; <u>provided</u>, <u>further</u>, that following the payment in full of the DIP Obligations, the Debtors shall be authorized to use Cash Collateral consistent with the Budget or any subsequent budget.    Nothing in this Interim Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business (which shall be subject to further Orders of this Court), or any Debtors' use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Interim Order, the DIP Loan Documents, and in accordance with the Budget.

12.    <u>Payoff Letter and Adequate Protection Lien</u>.

(a)    *Prepetition Senior Lender – Payoff Letter*.  Each of the Debtors and the Prepetition Senior Lender shall comply with the terms and provisions of the Payoff Letter.  The Debtors' residual interest in any amounts payable or potentially payable to any of them shall be

Page: 25
Debtors: In re 155 Route 10 Associates, Inc., *et al.*
Case No. 12-24414 (NLW)
Caption: Interim Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364 And 507 (1) Approving Postpetition
Financing, (2) Authorizing Use Of Cash Collateral, (3) Granting Liens And Providing Superpriority
Administrative Expense Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay, And (6)
Scheduling A Final Hearing

subject to the DIP Liens and the Adequate Protection Lien in accordance with the priorities set

forth in this Interim Order and the DIP Loan Documents.

(b)    *Prepetition Subordinated Lender -- Adequate Protection Lien.*    The

Prepetition Subordinated Lender is hereby granted a valid and perfected replacement lien and

additional security interests in, and liens on all of the Debtors' right, title and interest in, to and

under all DIP Collateral (the "**Adequate Protection Lien**").    The Adequate Protection Lien is

and shall be valid, binding enforceable and fully perfected as of the date hereof and subordinate

and subject to (i) the DIP Liens, (ii) the Permitted Prior Liens, and (iii) the DIP Carve Out.    In

addition, the Adequate Protection Lien shall be subordinate and junior to the Junior Carve Out.

(c)    *Treatment of Adequate Protection Lien.*    Other than as set forth herein or

as further ordered by the Court, the Adequate Protection Lien shall not be made subject to or *pari*

*passu* with any lien or with any lien or security interest heretofore or hereinafter granted in the

Cases or any Successor Cases.    The Adequate Protection Lien shall be valid and enforceable

against all parties, subject to the priorities set forth herein, including any trustee or other estate

representative appointed in the Cases or any Successor Cases, upon the conversion of any of the

Cases to a case under Chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or

upon the dismissal of any of the Cases or Successor Cases.

13.    Adequate Protection Superpriority Claim.

(a)    *Superpriority Claim of Prepetition Subordinated Lender.*    As further

adequate protection of the interests of the Prepetition Subordinated Lender, the Prepetition

Subordinated Lender is hereby granted an allowed administrative claim against the Debtors'

Page: 26
Debtors: In re 155 Route 10 Associates, Inc., *et al.*
Case No. 12-24414 (NLW)
Caption: Interim Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364 And 507 (1) Approving Postpetition
Financing, (2) Authorizing Use Of Cash Collateral, (3) Granting Liens And Providing Superpriority
Administrative Expense Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay, And (6)
Scheduling A Final Hearing

estates under Sections 503 and 507(b) of the Bankruptcy Code (the "**Adequate Protection**

**Superpriority Claim**") to the extent that the Adequate Protection Lien does not adequately

protect against any diminution in the value of the Prepetition Subordinated Lender's interests in

the Prepetition Collateral.

(b)     *Priority of Adequate Protection Superpriority Claim.*   The Adequate

Protection Superpriority Claim shall be junior to the DIP Carve Out and the Junior Carve Out,

the DIP Liens, the DIP Superpriority Claim and the Adequate Protection Lien and shall

otherwise have priority over administrative expenses of the kinds specified in or ordered

pursuant to Sections 503(b), and 507(b) of the Bankruptcy Code.

**Provisions Common to DIP Financing and Use of Cash Collateral Authorizations**

14.     Amendments.   The DIP Loan Documents may from time to time be amended,

modified or supplemented by the parties thereto without notice or a hearing if:  (i) in the

reasonable judgment of the Debtors and the DIP Lender, the amendment, modification, or

supplement (I) is in accordance with the DIP Loan Documents, (II) is not prejudicial in any

material respect to the rights of third parties, including the Prepetition Subordinated Lender, and

(III) has been consented to by the DIP Lender, and (ii) a copy (which may be provided through

electronic mail or facsimile) of the amendment, modification or supplement is provided to

counsel for any Statutory Committee, the Prepetition Subordinated Lender and the U.S. Trustee.

15.     Budget Maintenance.   The Budget and any modification to, or amendment or

update of, the Budget shall be in form and substance reasonably acceptable to the DIP Lender

and approved by the DIP Lender in its sole discretion and, upon payment in full of the DIP

Page: 27
Debtors: In re 155 Route 10 Associates, Inc., *et al.*
Case No. 12-24414 (NLW)
Caption: Interim Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364 And 507 (1) Approving Postpetition
Financing, (2) Authorizing Use Of Cash Collateral, (3) Granting Liens And Providing Superpriority
Administrative Expense Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay, And (6)
Scheduling A Final Hearing

Obligations, upon the approval of the Prepetition Subordinated Lender in its reasonable

discretion. The Debtors shall comply with and update the Budget from time to time in

accordance with the DIP Loan Documents (provided that any update shall be in form and

substance reasonably acceptable to the DIP Lender and approved by the DIP Lender in its sole

discretion and, upon payment in full of the DIP Obligations, upon the approval of the Prepetition

Subordinated Lender in its reasonable discretion), but in any event not less than on a monthly

basis (with delivery to the DIP Lender on or before the 10th day following the end of each of the

Debtors' fiscal months).

16.    Modification of Automatic Stay. The automatic stay imposed under Bankruptcy

Code Section 362(a) is hereby modified as necessary to effectuate all of the terms and provisions

of this Interim Order, including, without limitation, to: (a) permit the Debtors to grant the DIP

Liens, the Adequate Protection Lien, the DIP Superpriority Claim, and the Adequate Protection

Superpriority Claim; and (b) authorize the Debtors to pay, and the DIP Lender and Prepetition

Secured Creditors to retain and apply, payments made in accordance with the terms of this

Interim Order.

17.    Perfection of DIP Liens and Adequate Protection Lien.

(a)    *Automatic Perfection of Liens.* This Interim Order shall be sufficient and

conclusive evidence of the validity, perfection, and priority of all liens granted herein including

the DIP Liens and the Adequate Protection Lien, without the necessity of filing or recording any

financing statement, mortgage, notice, or other instrument or document which may otherwise be

required under the law or regulation of any jurisdiction or the taking of any other action

Page: 28
Debtors: In re 155 Route 10 Associates, Inc., *et al.*
Case No. 12-24414 (NLW)
Caption: Interim Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364 And 507 (1) Approving Postpetition
Financing, (2) Authorizing Use Of Cash Collateral, (3) Granting Liens And Providing Superpriority
Administrative Expense Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay, And (6)
Scheduling A Final Hearing

(including, for the avoidance of doubt, entering into any deposit account control agreement, customs broker agreement or freight forwarding agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens and the Adequate Protection Lien, or to entitle the DIP Lender or the Prepetition Secured Creditors to the priorities granted herein. Notwithstanding the foregoing, the DIP Lender is authorized to file, as it in its sole discretion deems necessary, such financing statements, mortgages, notices of liens and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence any of the DIP Liens, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded as of the Petition Date; provided, however, that no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens. The Debtors are authorized and directed to execute and deliver promptly upon demand to the DIP Lender all such financing statements, mortgages, control agreements, notices and other documents as the DIP Lender may reasonably request. The DIP Lender, in its sole discretion, may file a photocopy of this Interim Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien or similar instrument.

18.      Intentionally Omitted.

19.      Application of Proceeds of DIP Collateral. As a condition to the entry into the DIP Loan Documents, the extension of credit under the DIP Facility and the authorization to use Cash Collateral, the Debtors have agreed that the proceeds of DIP Collateral shall be applied as follows:

Page: 29
Debtors: In re 155 Route 10 Associates, Inc., *et al.*
Case No. 12-24414 (NLW)
Caption: Interim Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364 And 507 (1) Approving Postpetition Financing, (2) Authorizing Use Of Cash Collateral, (3) Granting Liens And Providing Superpriority Administrative Expense Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay, And (6) Scheduling A Final Hearing

      (a)    (i) Prior to the delivery of a Carve Out Trigger Notice, (x) all payments received by the DIP Lender in respect of any DIP Obligation and all funds transferred and credited to the "Concentration Account" maintained by the Debtors at First Niagara Bank and (y) all net proceeds from any Disposition of DIP Collateral, each shall be applied: *first*, to payment of fees, costs and expenses, including Lender Expenses payable and reimbursable by the Debtor Parties under the DIP Credit Agreement and the other DIP Loan Documents; *second*, to payment of interest with respect to the DIP Obligations, *third*, to payment of all DIP Obligations; and *fourth*, to the Debtor Parties' operating account, and (ii) after the delivery of a Carve Out Trigger Notice, the DIP Lender shall apply any and all proceeds of DIP Collateral as follows: *first*, to funding the DIP Carve Out, up to the DIP Carve Out Amount, in respect of any amounts thereunder then due and payable; *second*, to the payment of fees, costs and expenses, including Lender Expenses of the DIP Lender payable or reimbursable by the Debtor Parties under the DIP Loan Documents; *third*, to payment of all accrued unpaid interest on the DIP Obligations and fees with respect to the DIP Obligations; *fourth*, to payment of principal of the DIP Obligations then due and payable; *fifth*, to fund the DIP Indemnity Account (as defined herein); *sixth*, to payment of all other DIP Obligations with respect to all loans under the DIP Loan Documents; and *seventh*, any remainder shall for the account of and paid to whoever may be lawfully entitled thereto.

      (b)    Reserved.

      (c)    The Debtors shall not, directly or indirectly, voluntarily purchase, redeem, defease, prepay any principal of, premium, if any, interest or other amount payable in respect of

Page: 30
Debtors: In re 155 Route 10 Associates, Inc., *et al.*
Case No. 12-24414 (NLW)
Caption: Interim Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364 And 507 (1) Approving Postpetition Financing, (2) Authorizing Use Of Cash Collateral, (3) Granting Liens And Providing Superpriority Administrative Expense Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay, And (6) Scheduling A Final Hearing

any indebtedness prior to its scheduled maturity, other than the DIP Obligations and the Prepetition Senior Obligations (each in accordance with the DIP Loan Documents and this Interim Order) and obligations authorized under the Debtors' "first-day" orders.

20.     Proceeds of Subsequent Financing. If the Debtors, any trustee, any examiner with enlarged powers, any responsible officer or any other estate representative subsequently appointed in these Cases or any Successor Cases, shall obtain credit or incur debt pursuant to Bankruptcy Code Sections 364(b), 364(c) or 364(d) in violation of the DIP Loan Documents at any time prior to the repayment in full of all DIP Obligations and the termination of the DIP Lender's obligation to extend credit under the DIP Facility, including subsequent to the confirmation of any plan of reorganization or liquidation with respect to any or all of the Debtors and the Debtors' estates, then all the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Lender to be applied as set forth in paragraph 19(a) herein;

21.     Maintenance of DIP Collateral. Until the payment in full in cash of all DIP Obligations and the termination of the DIP Lender's obligation to extend credit under the DIP Facility, the Debtors shall:  (a) insure the DIP Collateral as required under the DIP Facility; and (b) maintain the cash management system which has been agreed to by the DIP Lender or as otherwise required by the DIP Loan Documents.

22.     Disposition of DIP Collateral; Rights of DIP Lender. Unless otherwise authorized by the Court, the Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral except as permitted by the DIP Loan Documents.  Nothing

Page: 31
Debtors: In re 155 Route 10 Associates, Inc., *et al.*
Case No. 12-24414 (NLW)
Caption: Interim Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364 And 507 (1) Approving Postpetition Financing, (2) Authorizing Use Of Cash Collateral, (3) Granting Liens And Providing Superpriority Administrative Expense Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay, And (6) Scheduling A Final Hearing

provided herein shall limit the right of the DIP Lender or the Prepetition Subordinated Lender to object to any proposed disposition of the DIP Collateral.

23.    Reserved.

24.    Termination Date.    On the Termination Date, (i) all DIP Obligations shall be immediately due and payable, and all commitments to extend credit under the DIP Facility will terminate, and (ii) all authority to use Cash Collateral derived from the proceeds of DIP Collateral shall cease, provided, however, that during the Remedies Notice Period (as defined herein), the Debtors may use Cash Collateral solely as set forth in paragraph 11 herein.

25.    Events of Default.    The occurrence of an "Event of Default" under the DIP Credit Agreement (unless waived by DIP Lender, in its sole discretion) shall constitute an event of default under this Interim Order (each, an "**Event of Default**").

26.    Rights and Remedies Upon Event of Default.

(a)    *DIP Facility Termination.*    Immediately upon the occurrence and during the continuance of an Event of Default, the DIP Lender may declare the DIP Facility terminated (such declaration, a "**Termination Declaration**").    Upon the issuance of a Termination Declaration, at the DIP Lender's option: (I) all or any portion of the Commitment of the DIP Lender to make Advances or otherwise extend credit may be suspended or terminated; (II) all DIP Obligations may be deemed immediately due and payable; and (III) after three (3) Business Days from the Termination Declaration Date, any right or ability of the Debtors to use any Cash Collateral (other than as expressly set forth in this Interim Order during the Remedies Notice Period) may be terminated, reduced or restricted by the DIP Lender, provided that during such

Page: 32
Debtors: In re 155 Route 10 Associates, Inc., *et al.*
Case No. 12-24414 (NLW)
Caption: Interim Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364 And 507 (1) Approving Postpetition
Financing, (2) Authorizing Use Of Cash Collateral, (3) Granting Liens And Providing Superpriority
Administrative Expense Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay, And (6)
Scheduling A Final Hearing

---

three (3) Business Days period, the Debtors may use Cash Collateral only in accordance with the

Budget. With respect to the DIP Collateral, following the Termination Declaration, subject to

the Remedies Notice Period, the DIP Lender may exercise all rights and remedies available to it

under the Loan Documents or applicable law against the DIP Collateral. Without limiting the

foregoing, the DIP Lender may, subject to the Remedies Notice Period (i) enter onto the

premises of any Debtor Party in connection with an orderly liquidation of the DIP Collateral;

and/or (ii) exercise any rights and remedies provided to DIP Lender under the DIP Loan

Documents or at law or equity, including all remedies provided under the Bankruptcy Code and

pursuant to this Interim Order and the Final Order. Following the termination of the Remedies

Notice Period, the DIP Lender may require the Debtor Parties to seek authority from the Court to

retain an Approved Liquidator for the purpose of conducting a liquidation or "going out of

business" sale and, if Debtors refuse to seek such authority, the DIP Lender shall be entitled to

seek such authority directly.

       (b)    *Notice of Termination.* Any Termination Declaration shall be given by

facsimile (or other electronic means) to counsel to the Debtors, counsel to the Prepetition

Subordinated Lender, counsel to any Statutory Committee, and the U.S. Trustee (the earliest date

any such Termination Declaration is made shall be referred to herein as the "**Termination**

**Declaration Date**"). The DIP Obligations shall be due and payable, without notice or demand,

and the use of Cash Collateral shall automatically cease on the Termination Declaration Date,

except as provided in paragraphs 11, 26 or otherwise in this Interim Order. Any automatic stay

otherwise applicable to the DIP Lender is hereby modified so that seven (7) calendar days after

Page: 33
Debtors: In re 155 Route 10 Associates, Inc., *et al.*
Case No. 12-24414 (NLW)
Caption: Interim Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364 And 507 (1) Approving Postpetition
Financing, (2) Authorizing Use Of Cash Collateral, (3) Granting Liens And Providing Superpriority
Administrative Expense Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay, And (6)
Scheduling A Final Hearing

the Termination Declaration Date (the "**Remedies Notice Period**"), the DIP Lender shall be entitled to exercise all rights and remedies against the DIP Collateral in accordance with the DIP Loan Documents and this Interim Order and shall be permitted to satisfy the DIP Superpriority Claim and the DIP Liens, subject only to the DIP Carve Out, and Permitted Liens.  During the Remedies Notice Period, the Debtors shall be entitled to seek an emergency hearing with the Court for the sole purpose of contesting whether an Event of Default has occurred and/or is continuing.  Unless the Court determines during the Remedies Notice Period that an Event of Default has not occurred and/or is not continuing, the automatic stay shall automatically be terminated at the end of the Remedies Notice Period without further notice or order and the DIP Lender shall be permitted to exercise all remedies set forth herein, in the DIP Credit Agreement, the DIP Loan Documents, and as otherwise available at law against the DIP Collateral, without further order of or application or motion to the Court, and without restriction or restraint by any stay under Sections 362 or 105 of the Bankruptcy Code, or otherwise, against the enforcement of the liens and security interest in the DIP Collateral or any other rights and remedies granted to the DIP Lender with respect thereto pursuant to the DIP Credit Agreement, the other DIP Loan Documents, or this Interim Order.

27.    Good Faith Under Section 364 of the Bankruptcy Code; No Modification or Stay of this Interim Order.  The DIP Lender has acted in good faith in connection with this Interim Order and its reliance on this Interim Order is in good faith.  Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, and in accordance with Section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Interim

Page: 34
Debtors: In re 155 Route 10 Associates, Inc., *et al.*
Case No. 12-24414 (NLW)
Caption: Interim Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364 And 507 (1) Approving Postpetition Financing, (2) Authorizing Use Of Cash Collateral, (3) Granting Liens And Providing Superpriority Administrative Expense Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay, And (6) Scheduling A Final Hearing

Order are hereafter modified, amended or vacated by a subsequent order of this Court, or any other court, the DIP Lender is entitled to the protections provided in Section 364(e) of the Bankruptcy Code. Any such modification, amendment or vacatur shall not affect the validity and enforceability of any advances previously made or made hereunder, or lien, claim or priority authorized or created hereby, provided that the Interim Order was not stayed by court order after due notice had been given to the DIP Lender at the time the advances were made or the liens, claims or priorities were authorized and/or created. Any liens or claims granted to the DIP Lender hereunder arising prior to the effective date of any such modification, amendment or vacatur of this Interim Order shall be governed in all respects by the original provisions of this Interim Order, including entitlement to all rights, remedies, privileges and benefits granted herein, provided that the Interim Order was not stayed by court order after due notice had been given to the DIP Lender at the time the advances were made or the liens, claims or priorities were authorized and/or created.

28.    <u>DIP and Other Expenses</u>.  The Debtors are authorized and directed to pay all reasonable out-of-pocket expenses of the DIP Lender in connection with the DIP Facility, as provided in the DIP Loan Documents, whether or not the transactions contemplated hereby are consummated, including, without limitation, legal, accounting, collateral examination, monitoring and appraisal fees, financial advisory fees, fees and expenses of other consultants, and indemnification and reimbursement of fees and expenses. Payment of all such fees and expenses shall not be subject to allowance by the Court. Professionals for the DIP Lender shall not be required to comply with the U.S. Trustee fee guidelines. Notwithstanding the foregoing,

Page: 35
Debtors: In re 155 Route 10 Associates, Inc., *et al.*
Case No. 12-24414 (NLW)
Caption: Interim Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364 And 507 (1) Approving Postpetition
Financing, (2) Authorizing Use Of Cash Collateral, (3) Granting Liens And Providing Superpriority
Administrative Expense Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay, And (6)
Scheduling A Final Hearing

---

at the same time such invoices are delivered to the Debtors, the professionals for the DIP Lender

shall deliver a copy of their respective invoices to counsel for any Statutory Committee, the

Prepetition Subordinated Lender and the U.S. Trustee, redacted as necessary with respect to any

privileged or confidential information contained therein.  Any objections raised by the Debtors,

the U.S. Trustee, the Prepetition Subordinated Lender or any Statutory Committee with respect

to such invoices within ten (10) days of the receipt thereof will be resolved by the Court.  The

allowance and payment of the Trust's Fees shall be subject to the same procedures.

29.    <u>Indemnification</u>.

(a)    The Debtors shall indemnify and hold harmless the DIP Lender and its

respective shareholders, members, directors, agents, officers, subsidiaries and affiliates,

successors and assigns, attorneys and professional advisors, in their respective capacities as such,

from and against any and all damages, losses, settlement payments, obligations, liabilities,

claims, actions or causes of action, whether groundless or otherwise, and reasonable costs and

expenses incurred, suffered, sustained or required to be paid by an indemnified party of every

nature and character arising out of or related to the DIP Loan Documents, or the DIP Facility or

the transactions contemplated thereby and by this Interim Order, whether such indemnified party

is party thereto, as provided in and pursuant to the terms of the DIP Loan Documents and as

further described therein and herein, or in connection with these Cases, any plan, or any action or

inaction by the Debtors, in each case except to the extent resulting from such indemnified party's

gross negligence or willful misconduct as finally determined by a final non-appealable order of a

court of competent jurisdiction.  The indemnity includes indemnification for the DIP Lender's

Page: 36
Debtors: In re 155 Route 10 Associates, Inc., *et al.*
Case No. 12-24414 (NLW)
Caption: Interim Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364 And 507 (1) Approving Postpetition
Financing, (2) Authorizing Use Of Cash Collateral, (3) Granting Liens And Providing Superpriority
Administrative Expense Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay, And (6)
Scheduling A Final Hearing

---

exercise of discretionary rights granted under the DIP Facility.   In all such litigation, or the

preparation therefor, the DIP Lender shall be entitled to select its own counsel and, in addition to

the foregoing indemnity, the Debtors agree to promptly pay the reasonable fees and expenses of

such counsel.

      (b)    *DIP Indemnity Account.*   Upon the conclusion of the Remedies Notice

Period, the Debtors shall pay $25,000 from proceeds of the DIP Collateral into an indemnity

account (the "**DIP Indemnity Account**") subject to first priority liens of the DIP Lender.   The

DIP Indemnity Account shall be released and the funds applied in accordance with paragraph 19

of this Interim Order upon the earlier to occur of (a) the receipt by the DIP Lender of releases

acceptable to the DIP Lender in its sole discretion and (b) the closing of an "exit financing" or

similar financing or transaction to which the Debtors and the DIP Lender are parties on terms

and conditions acceptable to the DIP Lender in its sole discretion.

    30.   <u>Proofs of Claim</u>.   Any order entered by the Court in relation to the establishment

of a bar date for any claims (including without limitation administrative claims) in any of the

Cases or Successor Cases shall not apply to the DIP Lender.   The DIP Lender will not be

required to file proofs of claim or requests for approval of administrative expenses in any of the

Cases or Successor Cases, and the provisions of this Interim Order relating to the amount of the

DIP Obligations and the DIP Superpriority Claims shall constitute a timely filed proof of claim

and/or administrative expense request.

    31.   <u>Rights of Access and Information</u>.   Without limiting the rights of access and

information afforded the DIP Lender under the DIP Loan Documents, the Debtors shall be, and

Page: 37
Debtors: In re 155 Route 10 Associates, Inc., *et al.*
Case No. 12-24414 (NLW)
Caption: Interim Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364 And 507 (1) Approving Postpetition
Financing, (2) Authorizing Use Of Cash Collateral, (3) Granting Liens And Providing Superpriority
Administrative Expense Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay, And (6)
Scheduling A Final Hearing

---

hereby are, required to afford representatives, agents and/or employees of DIP Lender and the

Prepetition Subordinated Lender reasonable access to the Debtors' premises and their books and

records in accordance with the DIP Loan Documents, and shall reasonably cooperate, consult

with, and provide to such persons all such information as may be reasonably requested.   In

addition, the Debtors authorize their independent certified public accountants, financial advisors,

investment bankers and consultants to cooperate, consult with, and provide to the DIP Lender all

such information as may be reasonably requested with respect to the business, results of

operations and financial condition of any Debtor Party.   In addition, in the event the Debtors

request or the DIP Lender otherwise agrees to any over advance of the amounts loaned to the

Debtors, both the DIP Lender and the Debtors shall provide the Prepetition Subordinated Lender

with reasonable notice of such request and/or agreement to overadvance, provided, however, that

any failure to provide such notice shall not impair the rights of the DIP Lender under this Interim

Order.

32.    <u>Carve Outs</u>.

(a)    *DIP Carve Out*.  As used in this Interim Order, the "**<u>DIP Carve Out</u>**"

means, collectively, the following expenses: (i) all statutory fees required to be paid to the Clerk

of the Bankruptcy Court and to the Office of the United States Trustee pursuant to 28 U.S.C.

§1930(a), (ii) upon the occurrence of any Event of Default and delivery of a written notice by the

DIP Lender to lead counsel for the Debtors, any Statutory Committee, the Prepetition

Subordinated Lender and the U.S. Trustee (a "**<u>Carve Out Trigger Notice</u>**"), an aggregate

amount equal to $500,000.00 (the "**<u>Case Professionals DIP Carve Out Amount</u>**"), which

Page: 38
Debtors: In re 155 Route 10 Associates, Inc., *et al.*
Case No. 12-24414 (NLW)
Caption: Interim Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364 And 507 (1) Approving Postpetition
Financing, (2) Authorizing Use Of Cash Collateral, (3) Granting Liens And Providing Superpriority
Administrative Expense Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay, And (6)
Scheduling A Final Hearing

amount may be used subject to the terms of this Interim Order to pay (A) allowed and unpaid

professional fees and expenses of the Debtors', and any Statutory Committee's professionals,

retained by either of them by final order of the Court (which order has not been reversed, vacated

or stayed unless such stay is no longer effective) under Sections 327 or 1103(a) of the

Bankruptcy Code, the "**Case Professionals**"), to the extent such fees and expenses are allowed

and payable pursuant to an order of the Court (which order has not been reversed, vacated or

stayed) ("**Allowed Professional Fees**") and (B) the reimbursement of out-of-pocket expenses

allowed by the Bankruptcy Court incurred by the Statutory Committee members in the

performance of their duties (but excluding fees and expenses of third party professionals

employed by such members) ("**Committee Fees**"), and (C) the Prepetition Subordinated

Lender's reasonable professional's fees and expenses (the "**Trust's Fees**"), in each case,

incurred after the delivery of a Carve Out Trigger Notice, and (D) any Allowed Professional Fees

of Case Professionals and the Trust Fees incurred, irrespective of allowance date, but unpaid

prior to the receipt of the Carve Out Trigger Notice.  No portion of the DIP Carve Out, any cash

collateral or proceeds of the DIP Loan may be used in violation of this Interim Order, including

paragraph 33 hereof.  So long as the Carve Out Trigger Notice has not been delivered, the

Borrower shall be permitted to pay, as the same may become due and payable and as allowed by

the Bankruptcy Court, fees and expenses of Case Professionals provided for in the Budget and

payable under 11 U.S.C. § 330 and § 331 pursuant to court order and the Trust's Fees, also as

provided in the Budget, and the same shall not reduce the Case Professionals DIP Carve Out

Amount.

Page: 39
Debtors: In re 155 Route 10 Associates, Inc., *et al.*
Case No. 12-24414 (NLW)
Caption: Interim Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364 And 507 (1) Approving Postpetition Financing, (2) Authorizing Use Of Cash Collateral, (3) Granting Liens And Providing Superpriority Administrative Expense Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay, And (6) Scheduling A Final Hearing

(b)      *Junior Carve Out*. As used in this Interim Order, the "**Junior Carve Out**"

means, the Case Professionals DIP Carve Out Amount plus $300,000.00 for an aggregate amount

equal to $800,000.00 (the "**Case Professionals Junior Carve Out Amount**"), which amount

may be used subject to the terms of this Interim Order to pay (A) allowed and unpaid

professional fees and expenses of the Case Professionals (other than, with respect to the Junior

Carve Out, professionals retained by the Prepetition Subordinated Lender) on account of

Allowed Professional Fees and (B) the reimbursement of Committee Fees.  The Debtors shall be

permitted to pay, as the same may become due and payable, fees and expenses of Case

Professionals provided for in the Budget, or any subsequent budget, and payable under 11 U.S.C.

§ 330 and § 331 pursuant to court order.  For purposes of clarity, the Junior Carve Out in the

Case Professionals Junior Carve Out Amount shall be in all respects senior to the Prepetition

Subordinated Obligations, the Prepetition Subordinated Liens, the Adequate Protection Lien and

the Adequate Protection Superpriority Claim.  Notwithstanding anything to the contrary herein,

the Junior Carve Out shall be funded solely from 50% of the proceeds of any distribution or

distributions that the Prepetition Subordinated Lender otherwise would be entitled to receive in

these jointly-administered cases until the full amount of the Junior Carve Out (i.e., $300,000) has

been funded.

(c)      *No Direct Obligation to Pay Professional Fees or Committee Expenses*.

Except for funding the Case Professionals DIP Carve Out Amount in the case of the DIP Lender

and the Case Professionals Junior Carve Out Amount in the case of the Prepetition Subordinated

Lender, in each case to the extent provided herein, the DIP Lender and Prepetition Subordinated

Page: 40
Debtors: In re 155 Route 10 Associates, Inc., *et al.*
Case No. 12-24414 (NLW)
Caption: Interim Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364 And 507 (1) Approving Postpetition
Financing, (2) Authorizing Use Of Cash Collateral, (3) Granting Liens And Providing Superpriority
Administrative Expense Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay, And (6)
Scheduling A Final Hearing

Lender shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any Case Professionals or any Committee Expenses incurred in connection with the Cases or any Successor Cases. Nothing in this Interim Order or otherwise shall be construed to obligate the DIP Lender and the Prepetition Subordinated Lender, in any way to pay compensation to or to reimburse expenses of any Case Professional (including any Committee Expenses), or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement. Nothing in this Interim Order or otherwise shall be construed to increase the DIP Carve Out and the Junior Carve Out if actual (i) Allowed Professional Fees of any Case Professional or (ii) Committee Expenses are higher in fact than the estimated fees and disbursements reflected in the Budget.

(d)    *Payment of DIP Carve Out After Carve Out Trigger Notice.* Any payment or reimbursement made on or after the delivery of the Carve Out Trigger Notice in respect of any Allowed Professional Fees (exclusive of the application of any retainers by any of the Professionals) or Committee Expenses shall permanently reduce the Case Professionals DIP Carve Out Amount on a dollar-for-dollar basis. Any funding of the DIP Carve Out shall be added to and made a part of the DIP Obligations and secured by the DIP Collateral and otherwise entitled to the protections granted under this Interim Order, the DIP Loan Documents, the Bankruptcy Code and applicable law.

33.    Limitations on the DIP Facility, the DIP Collateral, the Cash Collateral, the Case Professionals DIP Carve Out and the Junior Carve Out. The DIP Facility, the DIP Collateral, the Cash Collateral, the DIP Carve Out and the Junior Carve Out may not be used: (a) in connection

Page: 41
Debtors: In re 155 Route 10 Associates, Inc., *et al.*
Case No. 12-24414 (NLW)
Caption: Interim Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364 And 507 (1) Approving Postpetition
Financing, (2) Authorizing Use Of Cash Collateral, (3) Granting Liens And Providing Superpriority
Administrative Expense Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay, And (6)
Scheduling A Final Hearing

with or to finance in any way any action, suit, arbitration, proceeding, application, motion or

other litigation of any type (i) adverse to the interests of the Prepetition Subordinated Lender and

DIP Lender or their rights and remedies under the DIP Loan Documents, the Prepetition

Subordinated Credit Documents or this Interim Order or the Final Order, including, without

limitation, for the payment of any services rendered by the professionals retained by the Debtors

or any Statutory Committee in connection with the assertion of or joinder in any claim,

counterclaim, action, proceeding, application, motion, objection, defense or other contested

matter, the purpose of which is to seek, or the result of which would be to obtain, any order,

judgment determination, declaration or similar relief (ii) invalidating, setting aside, avoiding or

subordinating, in whole or in part, the DIP Obligations or the Prepetition Subordinated

Obligations, (iii) for monetary, injunctive or other affirmative relief against the DIP Lender or

the Prepetition Subordinated Lender, or their respective collateral, (iv) preventing, hindering or

otherwise delaying the exercise by the DIP Lender or the Prepetition Subordinated Lender of any

rights and remedies under this Interim Order or the Final Order, the DIP Loan Documents, the

Prepetition Subordinated Credit Documents or applicable law, or the enforcement or realization

(whether by foreclosure, credit bid, further order of the Court or otherwise) by the DIP Lender

upon any of the DIP Collateral or by the Prepetition Subordinated Lender upon any of its

Prepetition Collateral, or (iv) to pursue litigation against the Prepetition Subordinated Lender; (b)

to make any distribution under a plan of reorganization in any Chapter 11 Case; (c) to make any

payment in settlement of any claim, action or proceeding, before any court, arbitrator or other

governmental body without the prior written consent of the DIP Lender or the Prepetition

Page: 42
Debtors: In re 155 Route 10 Associates, Inc., *et al.*
Case No. 12-24414 (NLW)
Caption: Interim Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364 And 507 (1) Approving Postpetition
Financing, (2) Authorizing Use Of Cash Collateral, (3) Granting Liens And Providing Superpriority
Administrative Expense Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay, And (6)
Scheduling A Final Hearing

Subordinated Lender, as applicable, unless otherwise ordered by this Court; (d) to pay any fees

or similar amounts to any person who has proposed or may propose to purchase interests in any

of the Debtors without the prior written consent of the DIP Lender, (e) objecting to, contesting,

or interfering with, in any way, the DIP Lender's enforcement or realization upon any of the DIP

Collateral once an Event of Default has occurred, except as provided for in his Interim Order or

Final Order, or seeking to prevent the DIP Lender from credit bidding in connection with any

proposed Plan or Reorganization or Liquidation or any proposed transaction pursuant to Section

363 of the Bankruptcy Code; (f) using or seeking to use Cash Collateral while the DIP

Obligations remain outstanding, without the consent of the DIP Lender, in a manner inconsistent

with the Budget; (g) using or seeking to use any insurance proceeds constituting DIP Collateral

without the consent of the DIP Lender; (h) incurring Indebtedness (as defined in the DIP Credit

Agreement) outside the ordinary course of business without the prior consent of the DIP Lender,

except as permitted under the DIP Loan Documents; (i) objecting to or challenging in any way

the claims, liens, or interests held by or on behalf of the DIP Lender and the Prepetition

Subordinated Lender; (j) asserting, commencing or prosecuting any claims or causes of action

whatsoever, including, without limitation, any actions under Chapter 5 of the Bankruptcy Code,

against the DIP Lender or the Prepetition Subordinated Lender; or (k) prosecuting an objection

to, contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection,

priority, or enforceability of any of the DIP Obligations, the Prepetition Subordinated

Obligations, the DIP Liens or the Prepetition Subordinated Liens or any other rights or interests

of the DIP Lender or the Prepetition Subordinated Lender.  The provisions of this paragraph

Page: 43
Debtors: In re 155 Route 10 Associates, Inc., *et al.*
Case No. 12-24414 (NLW)
Caption: Interim Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364 And 507 (1) Approving Postpetition
Financing, (2) Authorizing Use Of Cash Collateral, (3) Granting Liens And Providing Superpriority
Administrative Expense Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay, And (6)
Scheduling A Final Hearing

33(i) through (k) shall not preclude a Statutory Committee from taking a position before the Court with respect to the matters raised therein nor the Court from issuing any appropriate order in connection therewith.

34.    <u>Payment of Compensation</u>.  Nothing herein shall be construed as a consent to the allowance of any professional fees or expenses of any Case Professionals or shall affect the right of the DIP Lender to object to the allowance and payment of such fees and expenses.  So long as no Event of Default has occurred and is continuing, the Debtors shall be permitted to pay fees and expenses allowed and payable by order (that has not been vacated or stayed, unless the stay has been vacated) under Sections 330 and 331 of the Bankruptcy Code, as the same may be due and payable, and to the extent set forth in the Budget.

35.    <u>Reservation of Certain Third Party Rights and Bar of Challenges and Claims</u>. Nothing in this Interim Order or the DIP Loan Documents shall prejudice the rights of a Statutory Committee, if granted standing and, solely if no Statutory Committee is appointed, any other party in interest granted standing by the Court, (other than the Debtors and/or their successors), to seek to assert claims against any of the Prepetition Secured Creditors on behalf of the Debtors or the Debtors' creditors and interest holders, or to object to or to challenge the stipulations, findings or Debtors' Stipulations set forth herein, including, but not limited to those in relation to:  (a) the validity, extent, priority, or perfection of the mortgage, security interests, and liens of any Prepetition Secured Creditor; (b) the validity, allowability, priority, or amount of the Prepetition Secured Obligations (including any fees included therein); (c) the secured status of the Prepetition Secured Obligations; or (d) any liability of any of the Prepetition Secured

Page: 44
Debtors: In re 155 Route 10 Associates, Inc., et al.
Case No. 12-24414 (NLW)
Caption: Interim Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364 And 507 (1) Approving Postpetition
Financing, (2) Authorizing Use Of Cash Collateral, (3) Granting Liens And Providing Superpriority
Administrative Expense Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay, And (6)
Scheduling A Final Hearing

Creditors with respect to anything arising from any of the respective Prepetition Credit

Documents.  Any and all parties in interest, including without any limitation such a party in

interest granting standing by the Court, or any Statutory Committee (if appointed) that has been

granted standing by the Court, must commence, as appropriate, a contested matter or adversary

proceeding raising such objection or challenge, including, without limitation, any claim against

any Prepetition Secured Creditor, a claim in the nature of a setoff, counterclaim or defense to the

applicable Prepetition Secured Obligations or any other claim (each, a "**Challenge**") within sixty

(60) calendar days following the date of entry of the Final Order (the "**Challenge Period**").  The

applicable Challenge Period may only be extended with the written consent of the applicable

Prepetition Secured Creditor or by order of the Court.  Upon the expiration of the Challenge

Period (the "**Challenge Period Termination Date**"), without the filing of a Challenge:  (A) any

and all such Challenges and objections by any party (including, without limitation, any Statutory

Committee, any Chapter 11 trustee, and/or any examiner or other estate representative appointed

in these Cases, and any Chapter 7 trustee and/or examiner or other estate representative

appointed in any Successor Case), shall be deemed to be forever waived, released and barred, (B)

all matters not subject to the Challenge, findings, Debtors' Stipulations, waivers, releases,

affirmations and other stipulations as to the priority, extent, and validity as to each Prepetition

Secured Creditors' claims, liens, and interests shall be of full force and effect and forever

binding upon the Debtors, the Debtors' bankruptcy estates and all creditors, interest holders, and

other parties in interest in these Cases and any Successor Cases; and (C) any and all claims or

causes of action against any of the Prepetition Secured Creditors relating in any way to the

Page: 45
Debtors: In re 155 Route 10 Associates, Inc., *et al.*
Case No. 12-24414 (NLW)
Caption: Interim Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364 And 507 (1) Approving Postpetition Financing, (2) Authorizing Use Of Cash Collateral, (3) Granting Liens And Providing Superpriority Administrative Expense Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay, And (6) Scheduling A Final Hearing

---

Debtors or the Prepetition Credit Documents shall be forever waived and released by the Debtors' estates, all creditors, interest holders and other parties in interest in these Cases and any Successor Cases.

36.   <u>Reservation of Rights</u>:  Notwithstanding anything to the contrary contained in this Interim Order, this Court expressly reserves the right to unwind the repayment of the Prepetition Senior Obligations or to order other appropriate relief against the Prepetition Senior Lender (including reallocation of payments or disgorgement) in the event there is a timely (in accordance with paragraph 35 hereof) and successful Challenge by any party in interest to the validity, enforceability, extent, perfection or priority of the Prepetition Senior Liens in the Prepetition Collateral, or to the amount, validity, enforceability of the Prepetition Senior Obligations.

37.   <u>No Third Party Rights</u>.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

38.   <u>Section 506(c) Claims</u>.  Upon entry of the Final Order, no costs or expenses of administration which have been or may be incurred in the Cases at any time shall be charged against the DIP Lender or the DIP Collateral or the Prepetition ~~Subordinated Lender~~ *Secured Creditors* or the Prepetition Subordinated Liens pursuant to Sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent of the DIP Lender and no such consent shall be implied from any other action, inaction, or acquiescence by any such agents or lenders.

-45-

Page: 46
Debtors: In re 155 Route 10 Associates, Inc., *et al.*
Case No. 12-24414 (NLW)
Caption: Interim Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364 And 507 (1) Approving Postpetition Financing, (2) Authorizing Use Of Cash Collateral, (3) Granting Liens And Providing Superpriority Administrative Expense Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay, And (6) Scheduling A Final Hearing

39. <u>No Marshaling/Applications of Proceeds</u>. Upon entry of the Final Order, neither the DIP Lender   nor the Prepetition ~~Subordinated Lender~~ Secured Creditors shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral.

40. <u>Section 552(b)</u>. The DIP Lender shall be entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code. Subject to the entry of the Final Order, the "equities of the case" exception under Bankruptcy Code §552(b) shall not apply to the DIP Lender or the Prepetition ~~Subordinated Lender~~ Secured Creditors with respect to proceeds, products, offspring or profits of any of the Prepetition Collateral.

41. <u>Joint and Several Liability</u>. Nothing in this Interim Order shall be construed to constitute a substantive consolidation of any of the Debtors' estates, it being understood, however, that the Debtors shall be jointly and severally liable for the obligations hereunder and in accordance with the terms of the DIP Facility and the DIP Loan Documents.

42. <u>Discharge Waiver</u>. The Debtors expressly stipulate, and the Court finds and adjudicates that, none of the DIP Obligations, the DIP Superpriority Claims or the DIP Liens shall be discharged by the entry of an order confirming any plan of reorganization, notwithstanding the provisions of Section 1141(d) of the Bankruptcy Code, unless the DIP Obligations have been paid in full in cash on or before the effective date of a confirmed plan of reorganization. None of the Debtors shall propose or support any plan or sale of all or substantially all of the Debtors' assets or entry of any confirmation order or sale order that is not conditioned upon the payment in full in cash, on the effective date of such plan of all DIP

Page: 47
Debtors: In re 155 Route 10 Associates, Inc., *et al.*
Case No. 12-24414 (NLW)
Caption: Interim Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364 And 507 (1) Approving Postpetition
Financing, (2) Authorizing Use Of Cash Collateral, (3) Granting Liens And Providing Superpriority
Administrative Expense Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay, And (6)
Scheduling A Final Hearing

Obligations.   The DIP Superpriority Claims and the DIP Liens shall not be affected in any

manner by the entry of an order confirming a plan in the Cases or any Successor Cases.

43.    Rights Preserved.   Notwithstanding anything herein to the contrary, the entry of

this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or

implicitly:   (a) DIP Lender's right to seek any other or supplemental relief in respect of the

Debtors; (b) any of the rights of the DIP Lender under the Bankruptcy Code or under non-

bankruptcy law, including, without limitation, the right to (i) request modification of the

automatic stay of Section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Cases

or Successor Cases, conversion of any of the Cases to cases under Chapter 7, or appointment of a

Chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions

of Section 1121 of the Bankruptcy Code, a Chapter 11 plan or plans.   Other than as expressly set

forth in this Interim Order, any other rights, claims or privileges (whether legal, equitable or

otherwise) of the DIP Lender are preserved.

44.    No Waiver by Failure to Seek Relief.   The failure of the DIP Lender to seek relief

or otherwise exercise its rights and remedies under this Interim Order, the DIP Loan Documents,

or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder,

thereunder, or otherwise of the DIP Lender.

45.    Binding Effect of Interim Order.   Immediately upon entry by this Court

(notwithstanding any applicable law or rule to the contrary), the terms and provisions of this

Interim Order shall become valid and binding upon and inure to the benefit of the Debtors, the

DIP Lender, the Prepetition Agents, the Prepetition Lenders, all other creditors of any of the

Page: 48
Debtors: In re 155 Route 10 Associates, Inc., *et al.*
Case No. 12-24414 (NLW)
Caption: Interim Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364 And 507 (1) Approving Postpetition
Financing, (2) Authorizing Use Of Cash Collateral, (3) Granting Liens And Providing Superpriority
Administrative Expense Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay, And (6)
Scheduling A Final Hearing

---

Debtors, any Statutory Committee or any other court appointed committee, appointed in the

Cases, and all other parties in interest and their respective successors and assigns, including any

trustee or other fiduciary hereafter appointed in any of the Cases, any Successor Cases, or upon

dismissal of any Case or Successor Case.

46.    No Modification of Interim Order.    Until and unless the DIP Obligations have

been paid in full in cash (such payment being without prejudice to any terms or provisions

contained in the DIP Facility which survive such discharge by their terms), and all commitments

to extend credit under the DIP Facility have been terminated, the Debtors irrevocably waive the

right to seek and shall not seek or consent to, directly or indirectly:  (a) without the prior written

consent of the DIP Lender (i) any modification, stay, vacatur or amendment to this Interim

Order; or (ii) a priority claim for any administrative expense or unsecured claim against the

Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without

limitation any administrative expense of the kind specified in Sections 503(b), 507(a) or 507(b)

of the Bankruptcy Code) in any of the Cases or Successor Cases, equal or superior to the DIP

Superpriority Claims, other than the DIP Carve Out; (b) without the prior written consent of the

DIP Lender, any order allowing use of Cash Collateral resulting from DIP Collateral; and (c)

without the prior written consent of the DIP Lender, any lien on any of the DIP Collateral with

priority equal or superior to the DIP Liens.  The Debtors irrevocably waive any right to seek any

material amendment, modification or extension of this Interim Order without the prior written

consent, as provided in the foregoing, of the DIP Lender, and no such consent shall be implied

by any other action, inaction or acquiescence of the DIP Lender.

Page: 49
Debtors: In re 155 Route 10 Associates, Inc., et al.
Case No. 12-24414 (NLW)
Caption: Interim Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364 And 507 (1) Approving Postpetition
Financing, (2) Authorizing Use Of Cash Collateral, (3) Granting Liens And Providing Superpriority
Administrative Expense Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay, And (6)
Scheduling A Final Hearing

47.    Interim Order Controls.  In the event of any inconsistency between the terms and

conditions of the DIP Loan Documents or this Interim Order, the provisions of this Interim Order

shall govern and control.

48.    Survival.  The provisions of this Interim Order and any actions taken pursuant

hereto shall survive entry of any order which may be entered:  (a) confirming any plan of

reorganization in any of the Cases; (b) converting any of the Cases to a case under Chapter 7 of

the Bankruptcy Code; (c) dismissing any of the Cases or any Successor Cases; or (d) pursuant to

which this Court abstains from hearing any of the Cases or Successor Cases, provided however

that the various superpriority claims or other administrative expenses shall survive only to the

extent permitted by applicable law.  The terms and provisions of this Interim Order, including

the claims, liens, security interests and other protections granted to the DIP Lender and

Prepetition Secured Creditors pursuant to this Interim Order and/or the DIP Loan Documents,

notwithstanding the entry of any such order, shall continue in the Cases, in any Successor Cases,

or following dismissal of the Cases or any Successor Cases, and shall maintain their priority as

provided by this Interim Order until all DIP Obligations have been paid in full and all

commitments to extend credit under the DIP Facility are terminated.  The terms and provisions

concerning the indemnification of the DIP Lender shall continue in the Cases and in any

Successor Cases, following dismissal of the Cases or any Successor Cases, following termination

of the DIP Loan Documents and/or the repayment of the DIP Obligations.

49.    Final Hearing.  The Final Hearing to consider entry of the Final Order and final

approval of the DIP Facility is scheduled for June 28, 2012 at 2:00 p.m. (ET) before the

Page: 50
Debtors: In re 155 Route 10 Associates, Inc., *et al.*
Case No. 12-24414 (NLW)
Caption: Interim Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364 And 507 (1) Approving Postpetition
Financing, (2) Authorizing Use Of Cash Collateral, (3) Granting Liens And Providing Superpriority
Administrative Expense Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay, And (6)
Scheduling A Final Hearing

---

Honorable N. Winfield United States Bankruptcy Judge, Courtroom 3D, at the United

States Bankruptcy Court for the District of New Jersey located at Martin Luther King, Jr. Federal

Building, 50 Walnut Street, Newark, NJ 07102.

50.    Notice of Final Hearing:  On or before June 7, 2012, the Debtors shall serve, by

United States mail, first-class postage prepaid, a copy of the DIP Motion and this Interim Order

upon:  (a) the Office of the United States Trustee for the District of New Jersey; (b) the thirty

(30) largest unsecured creditors of the Debtors at their last known addresses; (c) Choate, Hall &

Stewart LLP (Attn: John F. Ventola, Esq. and Jennifer Fenn, Esq.) and Greenberg Traurig LLP

(Attn: Jeffrey M. Rosenthal, Esq.), attorneys for the DIP Lender; (d) Kane Russell Coleman &

Logan PC (Attn: Joseph Coleman, Esq.), attorneys for the Prepetition Subordinated Lender; (e)

Ruberto, Israel & Weiner, P.C. (Attn: James C. Fox, Esq.), attorneys to the Prepetition Senior

Lender; (f) any party which has filed prior to such date a request for notices under Bankruptcy

Rule 2002 with this Court; (g) counsel for any Statutory Committee; (h) the Securities and

Exchange Commission; (i) the Internal Revenue Service; (j) GE Money Bank; (k) Local 888-

UFCW-AFL-CIO; (l) Local 108-RWDS-AFL-CIO; (m) UFCW Local 1776 & Participating

Employers; (n) IBM Credit LLC; (o) Mitsubishi UFJ Lease & Finance Inc.; (p) Crown Credit

Company, and (q) the PBGC.

51.    Objection Deadline: Objections, if any, to the relief sought in the Motion shall be

in writing, shall set forth with particularity the grounds for such objections or other statement of

position, shall be filed with the clerk of the Bankruptcy Court, and personally served upon (i)

Lowenstein Sandler PC (Attn: John K. Sherwood, Esq. and Wojciech F. Jung, Esq.) counsel to

Page: 51
Debtors: In re 155 Route 10 Associates, Inc., *et al.*
Case No. 12-24414 (NLW)
Caption: Interim Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364 And 507 (1) Approving Postpetition
Financing, (2) Authorizing Use Of Cash Collateral, (3) Granting Liens And Providing Superpriority
Administrative Expense Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay, And (6)
Scheduling A Final Hearing

the Debtors,  (ii) the Office of the United States Trustee for the District of New Jersey; (iii)

counsel to any Statutory Committee; (iv) Choate, Hall & Stewart LLP (Attn: John F. Ventola,

Esq. and Jennifer Fenn, Esq.), attorneys for the DIP Lender, and (v) Kane, Russell, Coleman &

Logan PC (Attn: Joseph Coleman, Esq.) so that such objections are filed with the Court and

received by said parties on or before 4 : 00 p.m. Eastern Time on June 25, 2012 with respect to

entry of the Final Order.

    52.    <u>Effect of this Interim Order</u>.  This Interim Order shall constitute findings of fact

and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect immediately,

notwithstanding anything to the contrary proscribed by applicable law.

    53.    <u>Retention of Jurisdiction</u>.  The Court has and will retain jurisdiction to enforce

this Interim Order according to its terms.

**Exhibit "A"**
**(Budget)**

## SDA, Inc.

**13-Week Cash Flow Forecast:  Assumes stores are non-operating post filing**

| Week | Notes | 1 FORECAST 6/8/12 | 2 FORECAST 6/15/12 | 3 FORECAST 6/22/12 | 4 FORECAST 6/29/12 | 5 FORECAST 7/6/12 | 6 FORECAST 7/13/12 | 7 FORECAST 7/20/12 |
|---|---|---|---|---|---|---|---|---|
| Week Ended: | (1) | | | | | | | |
| Cash Balance | (2) | 400,000 | - | - | - | - | - | - |
| **Cash Receipts:** | | | | | | | | |
| Sales | (3) | 400,000 | - | - | - | - | - | - |
| Credit Card Fees | | (5,600) | - | - | - | - | - | - |
| Sales Tax Receipts | | 28,400 | - | - | - | - | - | - |
| Sublet Rental Income | | - | - | - | 15,000 | - | - | - |
| **Total Receipts** | | **422,800** | **-** | **-** | **15,000** | **-** | **-** | **-** |
| **Cash Disbursements:** | | | | | | | | |
| Rent - Cures | (4) | - | - | - | - | | | |
| Rent - Non-Store | (4) | - | - | - | - | | | 27,000 |
| Payroll - Store | (5) | 344,061 | 250,000 | 75,000 | 75,000 | 50,000 | 35,000 | |
| Payroll - Non-Store | (5) | 77,384 | 100,000 | 77,384 | 75,000 | 75,000 | 75,000 | 25,000 |
| Utilities | (6) | - | - | - | - | | | 32,000 |
| Real Estate Taxes | (7) | - | - | - | - | | | 122,000 |
| Insurance | (8) | - | - | - | - | - | - | |
| Sales Taxes | (9) | - | - | 165,000 | 155,000 | | | |
| Other Operating Expenses | (10) | 50,000 | 50,000 | 50,000 | 50,000 | 25,000 | 25,000 | 20,000 |
| Disbursements | | 471,445 | 400,000 | 367,384 | 355,000 | 150,000 | 135,000 | 226,000 |
| **Cash from Operations** | | **(48,645)** | **(400,000)** | **(367,384)** | **(340,000)** | **(150,000)** | **(135,000)** | **(226,000)** |
| **Restructuring Disbursements:** | | | | | | | | |
| Bankruptcy Professionals (Escrow) | (11) | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 80,000 |
| Board of Director Fees & Expenses | | - | - | - | - | - | - | |
| Utility Deposits and Other | (6) | - | 120,000 | - | - | - | - | |
| US Trustee Fee | | - | - | - | - | - | 13,000 | |
| DIP Loan Fees & Attorney Fees | (12) | 378,500 | - | - | - | 47,323 | 8,190 | |
| Other Restructuring-related | (13) | - | - | - | - | - | 25,000 | 25,000 |
| **Cash Operating Disbursements** | | **448,500** | **190,000** | **70,000** | **70,000** | **117,323** | **116,190** | **105,000** |
| **Net Cash Flow** | | **$ (497,145)** | **$ (590,000)** | **$ (437,384)** | **$ (410,000)** | **$ (267,323)** | **$ (251,190)** | **$ (331,000)** |
| Beginning, Loan Balance | | 4,002,745 | 4,099,890 | 4,689,890 | 5,127,274 | 5,537,274 | 5,809,932 | 6,061,937 |
| Unused Line Fee | (14) | - | - | - | - | 5,335 | 815 | |
| Loan (Paydown) / Advance | (15) | 97,145 | 590,000 | 437,384 | 410,000 | 267,323 | 251,190 | 331,000 |
| Ending Loan Balance | | $ 4,099,890 | $ 4,689,890 | $ 5,127,274 | $ 5,537,274 | $ 5,809,932 | $ 6,061,937 | $ 6,392,937 |
| Net CF After Loan (Paydown) / Advance | | (400,000) | - | - | - | - | - | - |
| **Ending Cash Balance** | | **$ -** | **$ -** | **$ -** | **$ -** | **$ -** | **$ -** | **$ -** |

**Notes**
(1) Bankruptcy filing on June 5, 2012, store operations to cease shortly thereafter.  Auction anticipated to be held week of
  7/13/12, with hearing and settlement taking place the following week.
(2) Cash in transit estimated at $400k
(3) Cash proceeds from sales of inventory, real estate, fixed assets and other assets
(4) Cure costs for locations being sold, including June rent, excluding taxes which are accounted for below.  Rent for distribution center.
(5) Store payroll, primarily attributed to labor costs required to deliver inventory to buyers.  Non-store is required back office and DC support.
(6) Assumes a 2 week utilities deposit paid a week after filing
(7) Real Estate taxes are assumed to be paid at closing of 363 transaction
(8) June insurance projected ot be paid in July, July insurance paid in August.
(9) Reflects May and June sales taxes
(10) Other representes costs associated with the wind-down of store operations and delivery of assets per APAs
(11) Includes professional fees for Debtor (FA, Counsel, Claims Admin), Creditors Committee (FA / Counsel) as well as
  the Creditors Trust expenses (FA / Counsel).
(12) DIP Loan fees include Pro-rated Collateral Fee, Interest amounts, and Success Fee.
(13) Estimated other restructuring costs that may arise during the bankruptcy
(14) Unused line fee calculation based on 1.0% of Unused credit limit
(15) Loan balance will be used to fund any shortfall required.  Excess cash will be used to repay outstanding loan balance